JAMES KEANE *vs.* OLD COLONY RAILROAD COMPANY.

Middlesex. November 17, 1893. — March 29, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Trespass — License to lay Track on Private Land — Revocation — Evidence of Acts after Action brought — Consent of Selectmen.*

In an action for an alleged trespass in building a spur track of the defendant's railroad over a private way which was on the plaintiff's land, there was evidence tending to show an implied license by the plaintiff for the continuance of the track on his land for several years prior to action brought; but the existence of such license was in dispute. *Held,* that such license might be implied from facts which happened not only before action brought, but also, in the discretion of the presiding justice, from facts occurring afterward, as showing a purpose substantially continuous, though interrupted a short time by the single act of bringing the action. *Held also,* that evidence of the consent of the selectmen of the town in which the track was located to lay and operate the railroad over the private way and across a public street, which was probably introduced for the purpose of showing a right to cross the street, whether competent or not, became immaterial under the instructions of the judge that the plaintiff had shown that the track was on his land, and that this established his right to recover unless the defendant showed that the plaintiff licensed it to go upon his land, and to remain there.

TORT, for trespass alleged to have been committed by the defendant between August 1, 1884, and July 12, 1890, the date

of the writ.  At the trial in the Superior Court, before *Hammond*, J., there was evidence tending to show that the plaintiff was the owner of a parcel of land in Marlborough, situated on Howe Street on the southerly side of a private way called Weed Street; that the land in the deed conveying it to the plaintiff was bounded northerly " by a street . . . called Weed Street "; that the railroad tracks of the defendant ran parallel with Howe Street about two hundred feet southwesterly therefrom; and that in 1881 the defendant built a spur track from the line of its location through Weed Street on the side adjoining the plaintiff's land, and across Howe Street to a building known as the Boyd Corey shop, over which it has since run its cars and locomotives.  When the spur track was built, the plaintiff was living on his premises, and knew of its construction, but, while giving no express license or permission to its construction, he made no objection to it at the time.

On cross-examination the plaintiff, subject to his exception, testified that in May, 1887, he leased the rear portion of his lot to the Marlborough Granite Company for the purpose of carrying on the business of granite cutting, and that from that time until the autumn of the same year car-loads of granite were pushed up the track on Weed Street by the defendant at the request of the Marlborough Granite Company, and unloaded upon the leased premises, with the knowledge and without the objection of the plaintiff; and that at about the same time a car-load of lumber, which was to be used in altering a building upon his premises, was pushed up the track and unloaded on his land at the request of the contractor, but with the plaintiff's knowledge, and without objection on his part.

On further cross-examination, which was permitted by the judge for the purpose of showing the plaintiff's frame of mind and attitude prior to the date of the writ, and as bearing on the general question of his consent to the maintenance of the track, it appeared that in May, 1891, he moved a building on to his land, and placed it within three feet of Weed Street, and for a year prior to the trial he had rented it to one Wheeler as a cold-storage room for meat; that Wheeler received all his meat in cars, which were run upon the spur track and unloaded at the door, and that with the knowledge of the plaintiff, and without

his dissent, a platform had been built out from the house to the track, so that the meat might be more easily unloaded.

One Brigham, the station agent in Marlborough, a witness called by the defendant, testified that the plaintiff at one time complained to him that he was unable to get into his back yard with coal, and said that, if some planks were put down there it would accommodate him very much, and that the witness directed the section men to put down some planks, which the plaintiff had used ever since ; that the plaintiff had at times asked him to move the cars from the back of his house, and that he had done so; and that the plaintiff at one time within five years before action brought had said he would like to have the track taken up, to which the witness had replied that he could not do it.

One Wheeler, a witness called by the defendant, testified that after the date of the writ, and for about a year prior to the trial, he had occupied the building which the plaintiff had moved on to his premises as a refrigerator storehouse, for which he had paid rent to the plaintiff, and that about twice every week while he was there he had had car-loads of beef pushed up the track, and unloaded at his door, and that he never knew of the plaintiff objecting to this ; but that a short time before the trial he had acted for a beef-packing house in Chicago in negotiating with the plaintiff for the purchase of the building occupied by the witness, with the intention of using it for the purposes of a refrigerator storehouse, and that during the negotiations the plaintiff had stated that the track on Weed Street would be a benefit to such purchasers, and had never told him that he objected to its existence, or that he had an action about it pending.

The judge stated to the jury that he should allow the defendant to show the plaintiff's attitude with reference to the track since the action was brought, so far as it tended to throw any light on his frame of mind, saying that he should instruct the jury that, if the plaintiff was not willing to have the track there prior to the beginning of the action, the fact that he was afterward willing was immaterial; but that as he might have changed his mind, and as bearing on the question of whether the plaintiff had before consented, he should allow the defendant to show that the plaintiff made no objection within a reasonable time

afterward, and that he should instruct the jury that the plaintiff's consent after the bringing of the suit, if he had not consented before, was of no consequence. The defendant introduced in evidence an order of the selectmen of the town of Marlborough, giving their consent to the location of the track over the land of several persons and across Howe Street, subject to various conditions as to grading and paving.

The judge instructed the jury in substance as follows.

This railroad is located upon the plaintiff's side of the middle line of Weed Street, and is upon his land. That is conceded, and upon the rules which have been given in reference to the construction to be given to his deed he has shown beyond any kind of doubt that the railroad is upon his land. That establishes his right to recover against the defendant unless the defendant on its part shows that the plaintiff licensed and permitted it to go upon and stay upon his land, and to put its rails and run its engines there, and that is the main question in the case. The defendant must establish the proposition that permission was given by the plaintiff, or it fails to show its right to be there. The parties are agreed as to many things bearing upon that question. In the first place, it is agreed that the plaintiff never told the defendant that it might go on his land, though no evidence appears to show that he objected when the track was being constructed. The condition of his land, whether the track interfered with his rights, and to what extent, were known to him at the time. It is contended by the defendant that the plaintiff himself allowed his tenants to make use of the track during a part of the time in which he now complains that it was trespassing upon his land, and that he received the profits, if any, accruing from such use. On the part of the plaintiff it is said that he never consented, and that he never said or did anything which would authorize the railroad to think that he consented; that he has been protesting against it; that he went to the local agent of the defendant, and not only complained of the manner in which the cars were being loaded and unloaded, but because they were allowed to stand by the side of his premises; and that he asked not only that the defendant should remove the cars, but the tracks also. The counsel for the defendant referred to these circumstances as tending to show consent,

and the counsel for the plaintiff referred to them as tending to show a want of consent, and evidence has been introduced of acts complained of after the action was brought. This evidence has been admitted, not on the question whether he is now willing that the track should be there, or whether he has been willing at any time since the action was brought, but on the question whether during the time complained of he was willing; and this evidence as to his state of mind since he brought his action is important and material only so far as it tends to show what the state of his mind was during the time complained of. The real question is not whether he now consents, but whether during the whole or any part of the time of which he complains he consented or licensed the road to be there by his acts or by his conduct. To find a license it is not necessary to find that the plaintiff by any express language licensed the railroad; but if you find that by his acts and conduct he gave the defendant reason to believe that he was willing that the track should go there, and the defendant, so believing and relying upon his acts and conduct, placed the railroad upon his land, he cannot now complain of the act.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in November, 1893, and afterwards was submitted on the briefs to all the judges.

*H. S. Ormsby*, for the plaintiff.

*C. F. Choate, Jr.*, for the defendant.

ALLEN, J. There was evidence tending to show an implied license by the plaintiff for the continuance of the railroad for several years prior to the date of the writ; but the existence of such license was in dispute. Such license might be implied from circumstances, and the plaintiff no longer disputes the competency of the evidence offered for that purpose of facts which happened before the date of the writ. *Merrick* v. *Plumley*, 99 Mass. 566. But he contends that such license was revocable, if it ever existed, and that the bringing of the action was a revocation, and that evidence of what took place afterwards was irrelevant and incompetent. Assuming that the bringing of the action was a complete interruption of any previous license, yet it is conceivable that the plaintiff might afterwards assent to the

operation of the railroad.  If it could be shown by clear evidence that he did so assent, would that fact have any tendency to show that he also assented before the bringing of the action ? We cannot say that such subsequent assent might not be considered by the jury.  If it would be competent to show such subsequent assent by clear and explicit evidence, as, for example, by a written license without consideration, then the fact might also be shown by circumstantial evidence.  The mode of proving it is not material.  The fact of the interruption of the license by the bringing of the action would also be considered by the jury.  Notwithstanding such interruption, we cannot say that it was outside of the discretionary power of the court to admit the evidence.  *Morris* v. *French*, 106 Mass. 326.  *Sherman* v. *Wilder*, 106 Mass. 537.  *Thayer* v. *Thayer*, 101 Mass. 111, 114.  *Lane* v. *Moore*, 151 Mass. 87, and cases cited.  *Commonwealth* v. *Finnerty*, 148 Mass. 162.  *Todd* v. *Rowley*, 8 Allen, 51.  *Mayer* v. *People*, 80 N. Y. 364, 373–376.  There might be a purpose substantially continuous, though interrupted for a short time by the single act of bringing the action.

The consent of the selectmen could of course give no authority to lay or operate the railroad over the private way, but was put in, we presume, in order to show a right to cross Howe Street. Whether strictly competent or not, it became immaterial, because the judge in the clearest and most explicit manner instructed the jury that the plaintiff had shown beyond any kind of doubt that the railroad was on his land, and that this established his right to recover unless the defendant showed that he licensed and permitted it to go there and stay there.  There could be no mistaking the proposition that the defendant must fail in its defence unless it established that such permission was given by the plaintiff.  We see no chance for any misapprehension on the part of the jury.

In the opinion of a majority of the court, the entry must be

*Exceptions overruled.*